**Not for Publication**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **ACROCORE EXTERIOR MOULDINGS, LLC,**<br><br>　　　　　　　　　Plaintiff,<br><br>　　v.<br><br>**DRYVIT SYSTEMS, INC.,** *et al.*<br><br>　　　　　　　　　Defendants. | Civil Action No. 2:19-cv-22238 (ES) (MAH)<br><br>OPINION |

**MCNULTY, DISTRICT JUDGE**

　　Before the Court is the motion of the defendants, Dryvit Systems, Inc. and RPM International, Inc., for partial dismissal of the complaint filed by plaintiff Acrocore Exterior Mouldings, LLC. (DE 12).[1] The Court's jurisdiction is based on diversity of state citizenship, pursuant to 28 U.S.C. § 1332(a).[2] Having considered the parties' submissions, I decide this matter without oral

---

[1] Citations to the record will be abbreviated as follows:

　　Complaint = Acrocore's complaint, DE 1

　　Mov. Br. = Defendants' brief in support of their motion to dismiss, DE 12-1

　　Opp. Br. = Acrocore's brief in opposition to Defendants' motion, DE 17

　　Reply Br = Defendants' reply in support of their motion to dismiss, DE 21

　　Agreement = Parties' agreement (including addendums) at issue in this lawsuit, attached as Exhibit A to the Complaint, DE 1-1

[2]　　In response to a query from chambers, plaintiff's counsel represented that the members of Acrocore Exterior Mouldings, LLC, are citizens of New Jersey. (DE 49); *see GBForefront, L.P. v. Forefront Mgmt. Grp., LLC*, 888 F.3d 29, 34 (3d Cir. 2018) (holding that "a limited liability company is a citizen of all the states of its members"). I will therefore deem complete diversity, a jurisdictional prerequisite, to have been adequately alleged. If contested, that issue may of course be explored in discovery.

1

argument. *See* Fed. R. Civ. P. 78(b). As set forth below, Defendants' motion for partial dismissal is GRANTED.

**I.    BACKGROUND**

Plaintiff Acrocore, a New Jersey Limited Liability Company, is a moulding manufacturer with its principal place of business in Clifton, New Jersey. (*Id.* ¶¶ 5 & 23). Defendant RPM is a Delaware corporation headquartered in Ohio, which "owns subsidiaries that manufacture and market high-performance coatings, sealants and specialty chemicals." (Complaint ¶ 25). Defendant Dryvit, a Rhode Island corporation headquartered in West Warwick, Rhode Island, is one of RPM's subsidiaries specializing in manufacturing exterior cladding systems. (*Id.* ¶ 24).

On May 1, 2016, Acrocore and Dryvit entered into a four-year agreement whereby Acrocore would purchase certain products (shape admixture, shape extender, and shape mesh (the "Products")) from Dryvit and then use the Products to manufacture mouldings. (*Id.* ¶¶ 5 & 42–43). The manufactured mouldings were then sold through Dryvit's exclusive distribution network under the brand name "Dryvit Shapes by Acrocore." (*Id.* ¶¶ 9 & 43). The mouldings were then integrated into Dryvit's "Outsulation Systems"[3] and installed on residential and commercial buildings. (*Id.* ¶ 7). Acrocore and Dryvit signed two addendums which extended the Agreement to 2024. (*Id.* ¶ 6; Agreement at 16–17 (ECF Pagination)).

---

[3]     "[A]n Outsulation System includes [m]ouldings, adhesive continuous insulation, shape mesh embedded in a base coat, and finish, all of which are installed sequentially on the exterior of commercial and residential buildings." (Complaint ¶ 8).

Acrocore alleges that before entering into the Agreement, Dryvit assured it that the Products would conform to Dryvit's published data sheets, which referenced compliance with certain standards set by the National Fire Protection Association ("NFPA") and the American Society for Testing and Materials ("ASTM"). (*Id.* ¶¶ 12 & 33–36). In addition to these pre-Agreement assurances, the Agreement itself provides that "the Products will conform in all material aspects to Dryvit's published data sheets for the Products with respect to . . . testing." (*Id.* ¶ 46 (quoting the Agreement ¶ 17)). As Acrocore alleges, compliance with certain NFPA and ASTM standards is required by building codes throughout the United States. (*Id.* ¶ 13).

Acrocore eventually learned that, despite the pre-Agreement assurances and the Agreement's terms, Dryvit had changed the Products' composition, resulting in mouldings and Outsulation Systems that were not compliant with NFPA and ASTM standards. (*Id.* ¶¶ 17–18). In particular, Acrocore alleges on information and belief that, at some point before the parties reached the Agreement, Dryvit changed its supplier of the polymer additives in the Products to reduce costs and increase profits. Despite this change, Dryvit did not perform additional, required NFPA and ASTM testing. (*Id.* ¶¶ 17–18).

On October 30, 2019, Dryvit informed Acrocore that the published data sheets were false and that the Outsulation Systems and integrated mouldings were not in fact compliant with the requisite NFPA and ATSM standards. (*Id.* ¶ 15). In November 2019, Dryvit informed Acrocore that because the Products failed to meet the agreed-upon standards, Dryvit was "unable and unwilling to

3

sell" products that would allow Acrocore to manufacture and sell code-compliant mouldings. (*Id.* ¶ 67). An officer of an RPM subsidiary allegedly took the position that the contract was therefore "voided." (*Id.* ¶ 20).

Acrocore initiated this lawsuit, asserting a breach of contract claim against both Dryvit and RPM (Count I), a claim for breach of the implied covenant of good faith and fair dealing against Dryvit (Count II), and a fraud claim against Dryvit. (Count III). (Complaint ¶¶ 92–120). Defendants seek to dismiss the breach of contract claim as against RPM only, and the fraud claim against Dryvit. The motion is brought pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b), but because I conclude that dismissal of the fraud claim is warranted as a matter of law under ordinary Rule 12(b)(6) standards, I do not separately discuss the heightened pleading standards for fraud claims under Rule 9(b).

## II.   LEGAL STANDARDS

### A.   Federal Rule of Civil Procedure 12(b)(6)

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

4

"When reviewing a motion to dismiss, all allegations in the complaint must be accepted as true, and the plaintiff must be given the benefit of every favorable inference to be drawn therefrom." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) (internal quotation marks omitted). The Court is not required to accept as true "legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Finally, "[i]n deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

### III.   DISCUSSION

The Court analyzes the parties' disputes under New Jersey law pursuant to the Agreement's choice of law provision. (Complaint ¶ 31; Mov. Br. at 4).

#### A.   Breach of Contract

Defendants argue that Count I, the breach of contract claim, must be dismissed insofar as it is asserted against RPM because RPM was not a party to the Agreement between Dryvit and Acrocore. (Mov. Br. at 1 & 3–6). Plaintiff does not dispute that RPM was not a signatory to the Agreement, and that the Agreement states that it "benefits solely the parties to this Agreement and their respective permitted successors." (Opp. Br. at 2; Agreement ¶ 29). Plaintiff nevertheless argues that RPM, as a parent corporation and pursuant to general

5

agency principles, can be held liable for Dryvit's breach of contract. (Opp. Br. at 2 & 17–20).

To assert a breach of contract claim under New Jersey law, a Plaintiff must allege three elements: (i) a valid contract between the parties; (ii) breach of that contract; and (iii) damages resulting from that breach. *Roper & Twardowsky, LLC v. Snyder*, No. 13-3945, 2014 WL 3012930, at *6. (D.N.J. June 30, 2014). "A parent company is not normally liable for the contractual obligations of its subsidiary." *Westdale Const., Ltd v. Liberty State Fin. Holdings Corp.*, No. 09-2973, 2010 WL 1380380, at *5 (D.N.J. Apr. 1, 2010).

Nevertheless, Acrocore argues that RPM can be held liable for Dryvit's acts as RPM's agent, irrespective of corporate veil-piercing. The cases Acrocore cites for this proposition cite general principles of agency law, or the law of states other than New Jersey. *See Phoenix Canada Oil Co. Ltd. v. Texaco*, 842 F.2d 1466 at 1477 (3d Cir. 1988) (citing to the Restatement (Second) of Agency in a case where the underlying contract dispute hinged on application of Delaware law); *Expediters Int' l of Wash., Inc. v. Direct Line Cargo Mgmt. Servs., Inc.*, 995 F. Supp. 468, 481 (D.N.J. 1998) (analyzing agency in connection with a claim under the Restatement (Third) of Competition, not a contract claim under New Jersey law); *Graco, Inc. v. PMC Glob., Inc.*, No. 08-1304, 2009 WL 904010, at *12 (D.N.J. Mar. 31, 2009) (relying on *Phoenix* and *Expediters*); *Automated Salvage Transp., Inc. v. NV Koninklijke KNP BT*, 106 F. Supp. 2d 606, 626 (D.N.J. 1999) (citing to *Phoenix* and explaining that in the Third

6

Circuit, a parent corporation can be held liable without piercing the corporate veil).[4]

The status of the doctrine of agency-based liability of a parent corporation is somewhat less clear under New Jersey law.[5] Still, it has been embraced by the intermediate appellate courts, based on the same general agency-law principles cited above. *See Alfano v. BDO Seidman, LLP*, 925 A.2d 22, 27 (N.J. Sup. Ct. App. Div. 2007) (citing *Phoenix* and stating that "[w]hen one corporation acts as the agent of a disclosed principal corporation, the latter corporation may be liable on contracts made by the agent"); *Med. Transcription Billing, Corp. v. Randolph Pain Relief & Wellness Ctr., PC*, No. A-4673-17T2, 2019 WL 1785321, at *6 (N.J. Super. Ct. App. Div. Apr. 23, 2019) (recognizing that in New Jersey a parent corporation may be liable for a subsidiary's obligations where the subsidiary acts as the agent of the disclosed parent). I therefore would not rule out this theory as a matter of law at the pleading stage.

I am still required, however, to determine whether the complaint plausibly alleges facts to support that agency theory. Even assuming New

---

[4] Plaintiff cites to two other cases which discuss the substance of New Jersey agency principles, but in different contexts. (Opp. Br. at 17 (*citing Seltzer v. I.C. Optics, Ltd.*, 339 F. Supp. 2d 601, 609 (D.N.J. 2004) (analyzing personal jurisdiction over a parent company) *and Sears Mortgage Corp. v. Rose*, 634 A.2d 74, 79 (N.J. 1993) (analyzing the relationship between a closing attorney retained by a purchaser and the title-insurance company))).

[5] Acrocore and the Defendants debate the sufficiency of allegations to pierce the corporate veil. (Opp. Br. at 19). That is not, however, the theory asserted by Acrocore, which relies on the agency theory described *supra* to impose liability on RPM for Dryvit's breach of contract.

Jersey applies the agency principles cited by Acrocore, Acrocore's allegations do not suffice. It is true that we are not in the arena of veil-piercing; agency principles do not require Acrocore to prove that the principal, here RPM, "total[ly] dominat[es]" the subsidiary to hold the parent liable for the subsidiary's breaches. *Graco*, 2009 WL 904010, at *12 (quoting *Expediters Int' l of Wash.*, 995 F. Supp. at 481). It is likewise true that whether a business relationship rises to an agency relationship is generally a question of fact. *Intrepid Ins. Co. v. Paul Miller Auto, Inc.*, No. 11-6267, 2015 WL 519187, at *3 (D.N.J. Feb. 9, 2015). Nevertheless, Acrocore is not absolved of its *Twombly/Iqbal* obligation to plausibly and factually allege agency. Specifically, Acrocore must sufficiently plead not only an arrangement "between the two corporations so that one acts on behalf of the other and within usual agency principles, but the arrangement must be relevant to the plaintiff's claim of wrongdoing." *Graco*, 2009 WL 904010, at *12 (quoting *Phoenix Canada Oil*, 842 F.2d at 1477).

In the Complaint, Acrocore does not sufficiently allege that Dryvit was acting as RPM's agent when it entered into the Agreement. Indeed, the majority of the allegations about the Agreement and the breach of the Agreement involve only Dryvit. (*See, e.g.*, Complaint ¶¶ 5, 9, 12–15, 17, 19–21, 33–46, 56–57, 67 & 74). What Acrocore does allege is that RPM was the "moving force" throughout the performance of the agreement and the alleged breaches. (Complaint ¶¶ 4 & 104). Those moving-force allegations are summarized in paragraphs 63 to 66 of the Complaint. Plaintiff alleges (i) that many of the

8

emails sent during the negotiations included a message that the email was "the property of Dryvit/RPM [ ] or one of its operating companies" (*id.* ¶ 63); (ii) on June 2, 2017, the vice president of corporate development for RPM emailed Dryvit's CEO stating that "both of [Acrocore's] products -- the starter board and shapes -- could be big winners for us" (*id.* ¶ 64 (alteration in original)); (iii) during the negotiations of the second addendum to the Agreement, Acrocore learned that Dryvit could not "negotiate and finalize" the second addendum without RPM's approval, pursuant to RPM's instituted policy surrounding contract review, which required RPM attorneys to sign off on the addendum (*id.* ¶ 65); and (iv) an executive for another non-party subsidiary of RPM obeyed RPM's directives concerning Dryvit's performance under the agreement and made the statement that "the Agreement is voided" (*id.* ¶¶ 66–70 & 79–80).

While these allegations may speak generally as to the relationship between RPM and Dryvit, they do not plausibly allege an agency relationship in connection with the Agreement. They appear to set forth fairly typical coordination among entities in the same corporate family; unless more were required, the principle of separate incorporation would be eroded. The allegation that comes closest to describing any sort of agency relationship is discussed in paragraph 65 of the Complaint. At best, however, this allegation speaks to a general contract review policy of RPM; it does not suggest an agency relationship in connection with this Agreement.[6]

---

6     Moreover, the "moving force" allegations fall short of those that other courts have deemed sufficient under *Phoenix*. *See e.g., Graco*, 2009 WL 904010, at *12 (denying motion to dismiss based on allegations of, *inter alia,* an overall scheme in

9

All of the foregoing, moreover, fails to account for the bedrock principle that the parties are masters of their agreement and could contract for a contrary result. This Agreement specifically provides that it "benefits solely the parties to this Agreement and their respective permitted successors." (Agreement ¶ 29).

Based on the foregoing, I conclude that Acrocore has not adequately alleged an agency relationship between RPM and Dryvit in connection with the Agreement. Accordingly, the motion to dismiss Count I against RPM is GRANTED without prejudice.

### B.   Fraudulent Inducement

Defendants argue that the fraudulent inducement claim against Dryvit should be dismissed because, *inter alia,* the Agreement contains an integration clause which supersedes any prior representations. (Mov. Br. at 1). Acrocore responds that "an integration clause only defeats a claim for fraudulent inducement where the alleged misrepresentations contradict, vary, or alter the terms of the written contract"; because the alleged pre-Agreement misrepresentations here are consistent with the Agreement, says Acrocore, the

---

which the related defendants worked closely with one another to accomplish a common goal); *Pullman v. Alpha Media Pub., Inc.*, No. 12-1924, 2013 WL 1290409, at *20 (S.D.N.Y. Jan. 11, 2013) (analyzing allegations that the parent had ultimate control over subsidiary, there were overlapping business identities, common officers and principal place of business, and key agreements executed by parent company partners); *Fuller v. Midland Credit Mgmt. Inc.*, No. 11-5111, 2014 WL 883757, at *7 (N.D. Ill. Mar. 6, 2014) (concluding that claims survived a motion to dismiss based on allegations of, *inter alia,* overlapping officers and directors, common principal place of business, and that the corporate form existed to insulate parent from liability). Such cases must be read with care, however; I do not read them as holding that such facts constitute some minimum threshold.

claim survives. (Opp. Br. at 8 & 14). The issue is not whether there is a cause of action at all; rather, it is a question of drawing a line between claims of fraudulent inducement and claims of breach of contract.

In general, where a contract contains an integration clause, the parol evidence rule bars the introduction of evidence of extrinsic negotiations or agreements to supplement or vary its terms. There is an exception, however, for evidence of fraud in the inducement; such evidence is not offered to add or change contract terms but to void the contract altogether. *See Ocean Cape Hotel Corp. v. Masefield Corp.*, 164 A.2d 607, 611 (N.J. Super. Ct. App. Div. 1960) ("[P]arol proof of fraud in the inducement is not considered as either additional or substitutionary but rather as indicating that the instrument is, by reason of the fraud, void or voidable."); *Walid v. Yolanda for Irene Couture, Inc.*, 40 A.3d 85, 94 (N.J. Super. Ct. App. Div. 2012) (noting that "extrinsic evidence to prove fraud in the inducement is a well-recognized exception to the parol evidence rule"). The alleged fraud, however, must concern a matter not addressed in the agreement; in other words, the subject of the misrepresentation must be extraneous to the agreement. *See Travelodge Hotels, Inc. v. Honeysuckle Enters., Inc.*, 357 F. Supp. 2d 788, 795 (D.N.J. 2005) (citing *Filmlife, Inc. v. Mal "Z" Ena, Inc.*, 598 A.2d 1234, 1236 (N.J. Super. Ct. App. Div. 1991)). Where, by contrast, misrepresentations made during the course of negotiations are addressed by the terms of the contract, the claim becomes one for breach of contract, not fraudulent inducement. In such a case,

11

the integration clause will bar the claim. *RNC Systems, Inc. v. Modem Tech. Grp., Inc.*, 861 F. Supp. 2d 436, 454 (D.N.J. 2012).

Here, the integration clause reads as follows:

> This Agreement and all related schedules constitutes the sole and entire agreement of the parties with respect to the subject matter contained herein and therein, and supersedes all prior and contemporaneous understandings, agreements, representations and warranties, both written and oral, with respect to such subject matter.

(Agreement ¶ 22). Acrocore alleges that Dryvit fraudulently induced it to enter into the Agreement by falsely representing that the Products, the mouldings, and the Outsulation Systems into which the Products were integrated were code-compliant (as provided in Dyrvit's published data sheets). (Complaint ¶ 115). In the Agreement itself, Dryvit "warrants that the Products will conform in all material aspects to Dryvit's published data sheets for the Products with respect to . . . testing." (Agreement ¶ 17). Because the Agreement itself discusses conformance with Dryvit's data sheets, Defendants argue that the integration clause bars the fraudulent inducement claim.

Acrocore tries to save its fraudulent inducement claim by arguing that Defendants, as well as other judges within this district, have misinterpreted New Jersey case law. Specifically, Acrocore argues that under New Jersey law, "a plaintiff may bring a claim for fraudulent inducement, even in the face of an integration clause, so long as the alleged pre-contractual misrepresentations are not *directly contradicted* by the terms of the written contract." (Opp. Br. at 11 (emphasis added)). And because the pre-Agreement misrepresentations here do not "alter[] or var[y] the express terms of the Agreement, the fraudulent

12

inducement claim must stand alongside the breach of contract claims." (*Id.* at 14). In other words, according to Acrocore, the relevant inquiry is not only whether the subject matter of the alleged misrepresentations is addressed, but whether the misrepresentations contradict the relevant provisions of the contract.

It does not appear that the Supreme Court of New Jersey has addressed this issue specifically. Acrocore argues that relevant state appellate and trial court decisions do not sweep as broadly as Defendants claim—*i.e.,* that they do not hold that an integration clause bars fraudulent inducement claims where the misrepresentations are merely related to the subject matter of a contract. (Opp. Br. at 8–13). But neither, as Defendants point out, do those cases expressly require that a pre-contractual representation directly contradict the terms of an integrated contract, as Acrocore claims. (Reply Br. at 8).

The District of New Jersey has approached the issue as Defendants do, looking to whether the subject of the pre-contractual misrepresentations is addressed within the contract. *See e.g., Turbulent Diffusion Tech. Inc. v. Amec Foster Wheeler N. Am. Corp.*, No. 15-7105, 2017 WL 1752951, at *7 (D.N.J. May 4, 2017) (dismissing fraudulent inducement claim where "all of the alleged misrepresentations concern[ed] the same subject matter, [defendant's] ability to meet [a] code requirement"); *Joseph McSweeney Enterprises, LLC v. Mister Softee Sales & Mfg., LLC*, No. 12-06332, 2013 WL 4588569, at *4 (D.N.J. Aug. 28, 2013); *RNC Systems,* 861 F. Supp. 2d at 455; *Montclair State Univ. v. Oracle USA, Inc.*, No. 11-2867, 2012 WL 3647427, at *10 (D.N.J. Aug. 23, 2011). I find

13

this line of cases persuasive.[7]

As a line of demarcation between its fraudulent inducement claim and its breach of contract claim, Acrocore suggests the following distinction: The pre-Agreement statements pertain to *past facts* about what Dryvit *claimed to have done,* whereas the Agreement only speaks to Dryvit's promise that the products "will conform" to the data sheets. (*See* Opp. Br. at 5). The integration clause, however, provides that the Agreement "supersedes all prior . . . representations and warranties." And those prior representations concern the conformity of the goods; they are truly pertinent only insofar as they bear on Dryvit's ability and intent to perform under the contract. Applying the "subject matter" test embraced by this District's cases, I will dismiss the fraudulent inducement claim and confine Acrocore to its contractual remedies.[8]

Accordingly, Defendants' motion to dismiss Count III, the fraudulent inducement claim, is GRANTED.[9]

---

[7] Such an interpretation is also consonant with the principle that the federal courts should be wary of hijacking the interpretation of state law, bringing it into areas where the state itself has not gone. *See generally Werwinski v. Ford Motor Co.,* 286 F.3d 661, 680 (3d Cir. 2002) (explaining that federal courts should "opt for the interpretation that restricts liability, rather than expands it" until the state's highest court decides differently).

[8] Even taken on its own terms, Acrocore's argument that the pre-contract representations do not alter or vary the Agreement is unconvincing. In the Agreement, Dryvit warrants only that the Products "will conform" to the data sheets. The alleged pre-Agreement representations about Dryvit's past and then-present conformance with the data sheets would expand the scope of Dryvit's warranty on this subject in the Agreement.

[9] I do not reach Defendants' arguments that dismissal of the fraudulent inducement claim is warranted based on the economic loss doctrine and Rule 9(b).

## IV. Conclusion

Defendant's motion for partial dismissal is GRANTED. Count I is dismissed only insofar as it is asserted against RPM, and Count III, which is asserted only against Dryvit, is likewise dismissed. As this is an initial motion to dismiss, both dismissals are entered without prejudice to a properly supported motion to amend within 30 days. Counsel are cautioned, however, that any such amendment as to Count III would have to address the Court's legal view of the effect of the integration clause. An appropriate Order accompanies this Opinion.

/s/ Kevin McNulty
_____

**Kevin McNulty, U.S.D.J.**